UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**NEW CINGULAR WIRELESS P C S L L C**  :  **CASE NO. 2:23-CV-01769**

**VERSUS**  :  **JUDGE JAMES D. CAIN, JR.**

**CITY OF JENNINGS LOUISIANA ET AL**  :  **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM RULING

Before the court are cross-motions for summary judgment filed, respectively, by plaintiff New Cingular Wireless PCS LLC d/b/a AT&T Mobility ("AT&T") and defendants City of Jennings, Louisiana, and Philip Arceneaux, in his official capacity as City Inspector. Docs. 16, 19. Both motions are opposed. Docs. 18, 27.

### I.
### BACKGROUND

This suit arises from efforts by AT&T to site a wireless telecommunications tower in the city of Jennings, Louisiana. As set forth in the court's ruling in a prior case:

> AT&T filed an application for rezoning with the city on May 25, 2022, seeking appropriate permitting for the construction of an 80-foot monopole tower with a 5-foot lightning rod on property located at 1737 North Cutting Avenue. The city's zoning board recommended approval and the ordinance to rezone (Ordinance No. 1787) was introduced at the city council's regular meeting on July 12, 2022. The minutes of that meeting reflect that questions were raised by one member, who opposed the introduction of the ordinance, and that AT&T was to contact that member regarding his concerns. At the August 9 meeting, AT&T asked to postpone consideration of the ordinance until the next meeting. The request was approved by unanimous vote. *Id.* At the next regular council meeting, on September 13, 2022, a member moved to adopt the motion but failed to obtain a second. The motion therefore failed and the council president explained that the ordinance was no longer open

for discussion. On November 3, 2022, AT&T also submitted a commercial building permit application for the cell tower.

*New Cingular Wireless PCS LLC v. City of Jennings*, No. 2:22-cv-6025 (W.D. La. Sep. 22, 2023), doc. 23, p. 1 (record citations omitted). No action was taken on that application, however, and AT&T filed a complaint for equitable relief and declaratory judgment in this court. *Id.* at doc. 1. There it alleged that the city had unlawfully denied and/or failed to timely act on the application, in violation of the Communications Act of 1934, as amended by the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 151 *et seq. Id.* The parties filed cross-motions for summary judgment and the court found that AT&T was entitled to relief based on the city's failure to take final action on the application for rezoning. *Id.* at doc. 23. Accordingly, the court granted AT&T's request for declaratory judgment and ordered that the city render a decision on the rezoning application within 60 days. *Id.* It provided no relief as to the commercial building permit, finding that it was not ripe given the lack of decision on the zoning application. *Id.*

The city denied the rezoning application on November 14, 2023, and provided a written decision one week later. Doc. 1, atts. 5 & 6. On December 18, 2023, AT&T filed another complaint for equitable relief and declaratory judgment in this court. Doc. 1. It again alleges that defendants have violated the TCA by (1) failing to provide substantial evidence in support of their denial; (2) effectively prohibiting the provision of personal wireless services; and (3) unreasonably discriminating among providers of functionally equivalent services. *Id.* The parties now bring cross-motions for partial summary judgment

Page 2 of 12

on Count 1, asking the court to determine defendants' compliance with the substantial evidence requirement based on the record. Docs. 16, 19.

## II.
**SUMMARY JUDGMENT STANDARD**

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

The TCA contains "specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of [wireless telecommunications] facilities." *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 293 (2013). Under this statute, "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). There is no specific format requirement for the writing, and a defendant may rely on a detailed hearing transcript to support its decision. *Prime Tower Dev. LLC v. Clayton Cnty., Ga.*, 2020 WL 13573500, at *3 (N.D. Ga. May 19, 2020) (citing *Mun. Commc'ns LLC v. Cobb Cnty., Ga.*, 796 F. App'x 663, 669 (11th Cir. 2020)). The reasons provided "need not be elaborate or even sophisticated, but rather . . . simply clear enough to enable judicial review." *T-Mobile South, LLC v. City of Roswell, Ga.*, 574 U.S. 293, 302 (2015).

"Substantial evidence" is "more than a scintilla, but less than a preponderance" and comprises "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sprint Spectrum L.P. v. Parish of Plaquemines*, 2003 WL 193456, at *10 (E.D. La. Jan. 28, 2003). The TCA, however, limits the types of reasons that a zoning authority may use to justify its decision. Accordingly, "generalized concerns about

aesthetics or property values do not constitute substantial evidence." *U.S. Cellular Corp. v. City of Wichita Falls, Tex.*, 364 F.3d 250, 256 (5th Cir. 2004). Additionally, because the TCA "is centrally directed at whether the local zoning authority's decision is consistent with the applicable zoning requirements," the challenged decision must comply with those requirements. *Id.*

AT&T first submitted a commercial building permit application regarding the proposed tower in June 2021. Doc. 16, att. 2, p. 3, ¶ 5. The city's Code Enforcement Department denied that application. *Id.* At the department's instruction, AT&T instead filed a Zoning Map Amendment Application, seeking rezoning of the proposed site from A-2 Residential (Medium Density) to C-2 Commercial (Central Business District). *Id.*; *see* doc. 18, att. 1, p. 4. The city initially denied the requested rezoning, after which AT&T agreed to reduce the height of the proposed tower from 145 feet to 85 feet. Doc. 16, att. 2, pp. 6–7. A new application was then presented at a public meeting of the City of Jennings Planning and Zoning Board on July 12, 2022, where it was unanimously approved. *Id.* at 112–46 (application); *id.* at 148 (zoning board minutes). As described above, the city council failed to issue a decision within the TCA's deadlines and this court ordered the city to reach a decision within 60 days. The matter then came before the city council at a public hearing on November 14, 2023. Despite advance notice, no member of the public spoke in opposition to the requested rezoning. Doc. 16, att. 3, pp. 82, 102–35.

At the hearing both the AT&T representative and Jennings Mayor Henry Guinn acknowledged that the city's Code of Ordinances was silent as to cell tower prohibitions in either Zones A-2 or C-2.[1] *Id.* at 9–11. Mayor Guinn stated:

> I think that there was a . . . slight assumption because the code was silent to cellular communication that the council would kind of remain silent. And . . . I think the fear is the creation of—of spot zones in—you know, there—there may be leeway. There may not be leeway. But you could essentially open Pandora's box if you start going throughout the City of Jennings and each resident enters into a contract with a cellular, you know, company or provider, and then the next thing you know, you got cell towers popping up all over the place.
> So that—that leads to two topics of discussion. We desperately need a communications ordinance—a cellular tower ordinance to dictate where these things can specifically be placed, force these providers to use existing locations. And I guess my question is, has there ever been an alternative site that was sought that was already zoned commercial?

*Id.* at 113. AT&T's representative responded, describing the company's search process and its unsuccessful attempts to find available commercial property within the appropriate range. *Id.* at 114–15. She also addressed the issue of an ordinance on cell tower sites:

> [Y]ou could absolutely, and you should absolutely go through the process of crafting and passing a . . . telecommunications ordinance. A lot of parishes, even more rural parishes, have them. And we regularly advise parishes on to the extent you—you want advice, you can get all kinds of input from different stakeholders. We're happy to do that. I advised, I think, Pointe Coupee last year on one. This is a problem, you know, and a demand that's not going to go away any time soon. So you should absolutely do that.

---

[1] Zone A-2 contains certain "permitted uses," namely residential buildings, and "special uses permitted by the mayor and council," limited to public libraries or museums, private recreational uses, hospitals, and cemeteries and public utility stations. It then specifies following prohibited uses: (1) mobile homes, (2) motor homes and travel trailers except when not in use, (3) garage sales, yard sales, merchandise sales, barters or exchanges, except as permitted, and (4) sale of alcoholic beverages for consumption on the premises. Doc. 18, att. 1, pp. 10–11. Buildings in Zone A-2 are subject to a 35' height restriction. *Id.* at 11.
   Zone C-2 permits a number of businesses, including "all business not specifically restricted or prohibited." *Id.* at 17. It prohibits only animal hospitals, building material yards, freight terminals, bulk fuel storage, and farm cropping. *Id.* at 18. There is no height restriction for Zone C-2. *Id.* at 18.

> With respect to this tower, unfortunately, it's before you now. And so legally, you can't—it's kind of already in play, and there needs to be a decision made on it.

*Id.* at 115–16.

Councilman LeJeune of District C, where the proposed tower site is located, then voiced objections. He stated that he had walked the neighborhood and "the vast majority were opposed to rezoning . . . and did not want a tower in that neighborhood." *Id.* at 117. Councilman Armentor of District B also stated that he had received "a bunch of calls from District C" opposing the tower site. *Id.* at 119–20. Mayor Guinn raised the possibility of leasing space on the water tower. *Id.* at 123–26. Councilman Van Hook of District E emphasized that the issue before the council was "simply to decide on whether the zoning [should be] changed over to commercial from residential." *Id.* at 126. The council took questions from an audience member, who did not appear to oppose the rezoning, and the mayor provided a brief overview of this dispute's history. He also stated:

> And again, the council has expressed their concerns. I've expressed my concerns. I think it's fixable. I think it needs to be fixable because nobody's moving away from cell phones. But at the same time, we all love our home, and we don't want the next door to just become commercial because a resident enters into a lease agreement and it gets rezoned. So there's—there's a lot of things at play here. More specifically is—the rezoning key is . . . what do we allow in residential, what do we allow in commercial.

*Id.* at 130. Councilman Van Hook further emphasized that the council had "worked very hard to move away from" spot zoning based on resident feedback and instead have residential areas remain entirely residential. *Id.* at 131. The motion was then put to a vote and was opposed unanimously. *Id.* at 133; doc. 1, att. 5.

On this record, AT&T maintains that the council lacked adequate justification to deny the rezoning application since it voiced only generalized concerns and appeared to acknowledge that the tower was permitted under either Zone A-2 Residential or Zone C-2 Commercial. The court disagrees on the latter point. Structures in Zone A-2 are (1) limited to permitted or special uses, which do not include cell towers, and (2) subject to a height restriction of 35 feet. *See* note 1, supra. While the prohibited uses are selective, the fact that these do not exclude cell towers or hundreds of other potential uses does not mean that anything falling in the gap is therefore permitted. Instead, the specified "prohibited uses" (mobile homes, motor homes and travel trailers, garage sales, and sale of alcoholic beverages) appear to be activities or structures that could otherwise coincide with a permitted use. Accordingly, the council was within its rights to consider this matter as a rezoning application and to determine whether the parcel should be converted to commercial use.

The decision was communicated to AT&T one week after the council meeting in a letter with the following justification:

> Therefore, for the reasons expressed by the City Council in previous Council meetings, for the reasons discussed during the City Council meeting on November 14, 2023, which are contained in the attached transcript . . . and the attached Minutes of the November 14, 2023 Council meeting, and for the reasons presented by the City in defense of the referenced litigation, the City of Jennings maintains its position that a building permit will not be issued to New Cingular Wireless PCS, LLC d/b/a AT&T Mobility for the construction of a cell tower on the residential property which was the subject of the proposed ordinance.
> 
>       As expressed by the Council and Mayor Guinn during the Council meeting, the City is interested in working with New Cingular Wireless PCS, LLC d/b/a AT&T to assist in securing a location for a cell tower in a

> commercially zoned area that does not present the issues of concern raised by the community and addressed by the Council.

Doc. 1, att. 6. AT&T maintains that the justifications offered in this writing and the transcript incorporated by reference are too broad to comply with the TCA's written decision and substantial evidence requirements.

The TCA's minimum justification standards require that "the government's decision be supported by evidence that is both substantial and substantiated." *Eco-Site, Inc. v. City of Huber Heights, Ohio*, 2018 WL 3092901, at *5 (S.D. Ohio June 22, 2018) (citing *T-Mobile Cent., LLC v. Charter Twp. Of W. Bloomfield*, 691 F.3d 794, 799 (6th Cir. 2012)). The transcript relays secondhand constituent concerns on a number of issues, but particularly on the one emphasized in the letter and by Mayor Guinn at the close of the hearing: the aesthetic impact of the tower and the impact of spot-zoning within residential areas of the city. To this end, however, no particular evidence of that impact was provided and only general, unsubstantiated concerns regarding home values and retaining a "small city" feeling. *E.g.*, doc. 16, att. 3, p. 121 ("And then you've got a resident, you know, their . . . biggest investment is their home, you know? And it's—it's hard to go against those people."); *id.* at 128–29 (noting one family's concern that the tower would "bring back vibes of the metropolitan city, which is what they moved away from.").

Generalized aesthetic objections do not qualify as substantial evidence. *Cobb Cnty., Ga.*, 796 F. App'x at 668–69. Instead there must be a more developed record before the local governing board, such as "evidence of an adverse impact on property values or safety concerns[.]" *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 762 (11th Cir.

2005). Here councilmembers and the mayor only voiced general opposition on behalf of constituents and no evidence was introduced to support these viewpoints. The availability of alternative sites to eliminate residents' concerns may prove relevant.[2] *Id.* (citing *PrimeCo Pers. Commc'ns, Ltd. P'ship v. City of Mequon*, 352 F.3d 1147, 1151 (7th Cir. 2003)). But AT&T stated that it was not able to find any available and suitable site already zoned commercial, despite an exhaustive search, and defendants failed to rebut this assertion anywhere in the record. Councilmembers and the mayor relayed constituent concerns in the most general terms, did not provide any evidence to substantiate these concerns such as petitions, and did not even discuss the proposed site and tower in relationship to any particular nearby structures.[3] No citizen appeared to speak in opposition to the tower. Furthermore, there is no record of any opposition before the rezoning board. To the extent the council was concerned with "spot zoning," it failed to substantiate its claims of public opposition, substantiate concerns regarding the impact at this particular site, or point to a provision in the Code of Ordinances limiting such applications. *Cf. Mun. Commc'ns III, LLC v. Columbus, Ga.*, 2024 WL 3260886, at *9 (M.D. Ga. Jul. 1, 2024)

---

[2] The mayor and councilmembers also raised the possibility of collocating AT&T's antenna by placing it on a water tower. But "the preference for collocation comes into play only when erecting an antenna in a new location is objectionable because of unsightliness or some other factor," and the court need not consider it if defendants have not substantiated their concerns in the first instance. *City of Mequon*, 352 F.3d at 1151.

[3] Though there is scant recent Fifth Circuit authority under the TCA's substantial evidence requirement, this case is similar to *Alltel Corp. v. City of Jackson, Miss.*, 466 F.Supp.3d 673, 682–83 (S.D. Miss. 2020). In that matter, councilmembers relayed more specific aesthetic concerns, with one "objecting that 'many communities use Lakeshore as a gateway" and 'everyone coming out on Lakeshore and Terry Road will pass by and notice 'this gigantic 150-foot [monopole] tower,' which 'is not one of your prettier features' and is 'probably one of the poorer designs as far as how it looks.'" *Id.* at 680. The court noted a lack of record evidence, beyond a vaguely worded petition signed by 21 residents, to back up the councilmember's objections. *Id.* at 682. It also determined that, even if it could assume residents shared these objections, the councilmember's arguments were "plainly of the 'generalized concerns' variety" because "[t]here is no evidence that the proposed tower can be seen from the neighborhoods to which [the councilmember referred (or in which any of those who signed the petition reside)." *Id.* at 683.

(denial of rezoning application for cell tower, following photo simulations and "extensive public opposition" at the public hearings, supported by substantial evidence under TCA). The lack of any substantiation and the vagueness of the councilmembers' concerns prevent judicial review in violation of the TCA. Based on the foregoing, the court concludes that defendants' decision to deny the rezoning application was not supported by substantial evidence. Accordingly, AT&T is entitled to summary judgment on Count 1 of its complaint.

As to the remedy, AT&T seeks a judgment (1) declaring that defendants violated 47 U.S.C. § 332(c)(7)(B)(iii); (2) directing defendants to grant all permits and approvals necessary to erect the proposed wireless communications tower; and (3) estopping defendants from taking any action to prevent AT&T from constructing and operating the proposed wireless communications tower. Courts have found that the proper remedy for a governing body's failure to comply with the TCA's "in writing" or "substantial evidence" provisions is "injunctive relief compelling the defendant to issue the requested permit." *Tennessee ex rel. Wireless Income Properties, LLC v. City of Chattanooga*, 403 F.3d 392, 399 (6th Cir. 2005) (collecting cases). Such relief "best serves the TCA's stated goal of expediting resolution of this type of action." *Verizon Wireless Personal Commc'ns, LP v. Harrison Cnty.*, 2015 WL 12564945, at *8 (S.D. Miss. Nov. 9, 2015) (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999)). Given that this matter has already required federal intervention once before, and that it has been over three years since AT&T first filed its rezoning application, the court sees no point in remanding the matter to the city. The city has had two chances to address this matter in compliance with

the statute and AT&T is entitled to an expedited resolution of its application under federal law. Accordingly, the court will grant the requested declaratory and equitable relief.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 16] filed by plaintiff New Cingular Wireless PCS LLC d/b/a AT&T Mobility will be **GRANTED** and the Motion for Partial Summary Judgment [doc. 18] filed by defendants City of Jennings and Philip Arceneaux will be **DENIED**. Judgment will therefore be entered in AT&T's favor on Count 1 and its requests for declaratory and equitable relief will be granted, with AT&T's remaining claims **DENIED AS MOOT**. The court will also issue a permanent injunction requiring defendants to grant all permits and approvals necessary to erect the proposed wireless communications tower and estopping defendants from taking any action to prevent AT&T from constructing and operating the proposed wireless communications tower.

**THUS DONE AND SIGNED** in Chambers on the 16th day of October, 2024.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**